UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LEAMON LORNE OLIVER                                                PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:05CV-262-S

SUN LIFE ASSURANCE COMPANY OF CANADA                DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the plaintiff, Leamon Lorne Oliver, to remand this action to the Jefferson County, Kentucky, Circuit Court on the ground that we lack subject matter jurisdiction.

In this action, Oliver contends that disability benefits which he had been receiving under a long term disability policy issued by defendant Sun Life Assurance Company of Canada were wrongfully terminated. Oliver filed this action in the Jefferson County, Kentucky, Circuit Court. It was removed by Sun Life under our federal question jurisdiction. Sun Life based its removal on the allegation in the complaint that "[t]he actions of the Defendant violate the Employee Retirement Income Security Act of 1974..." Complaint, ¶ 27. (hereinafter referred to as "ERISA").

Oliver has moved to remand the action to state court, contending that, in fact, the disability policy in question is not an employee welfare benefit plan as defined by ERISA.

Oliver stated, in pertinent part, in his affidavit that:

> ...2. I purchased the long-term disability insurance from Sun Life Assurance Company and paid for the entire premiums each month by payroll deduction...
>
> 3. I was told by my employer that the long term disability insurance was completely voluntary, that the employer would not pay for any of it and that the only benefits available in terms of disability were short term disability, which was for six months and administered solely by Link-Belt Construction Equipment Company.

> 4. The long-term disability coverage, which employees could voluntarily purchase, was completely separate from the short-term disability, which was handled by the employer.
>
> 5. At no time did my employer, Link-Belt Construction Equipment Company ever endorse or promote the long-term disability policy. In fact, I was told on the one and only occasion that it was publicized to me that I could "take it or leave it"...
>
> 6. Once my short-term disability expired, I dealt solely and directly with Sun Life Assurance Company for my long-term disability.
>
> 7. Link-Belt performed no services in connection to the group long-term disability policy, other than deducting the full premium from my payroll, and completing a portion of the Sun Life long-term claim form that required the employer to complete.
>
> 8. The premium I paid to Sun Life Assurance Company of Canada was on an after tax basis...

In response to Oliver's motion to remand, Sun Life attempts to establish that the policy is an employee benefit plan under ERISA. Neither the affidavit of Andrea Elder, the Link-Belt Construction Equipment Company Compensation and Benefits Analyst, nor the language of the policy itself contravene the statements made by Oliver in his affidavit.

Removal statutes are to be strictly construed with all doubts as to the propriety of removal resolved in favor of remand. *See, Miller v. PPG Industries, Inc.*, 237 F.Supp.2d 756, 759, n. 5 (W.D.Ky. 2002), *citing, Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). In *Thompson v. American Home Assurance Company*, 95 F.3d 429 (6th Cir. 1996) the United States Court of Appeals for the Sixth Circuit articulated a three-step factual inquiry in order to determine whether a given policy or plan constitutes an "ERISA plan:"

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. [citations omitted]. Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." [citations omitted]. Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson*, 95 F.3d at 435. The court went on to state the requirements for application of the "safe harbor" provision as defined by the Department of Labor regulations, 29 CFR § 2510.3-1(j). A policy will be exempted under ERISA only if all four of the "safe harbor" criteria are satisfied:

> 1. The employer makes no contribution to the policy;
>
> 2. Employee participation in the policy is completely voluntary;
>
> 3. The employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and
>
> 4. The employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435.

In this case, from the standpoint of a reasonable employee, this was not an employer-endorsed, sponsored, or managed plan. The uncontroverted testimony of Oliver evidences that the short-term and long-term disability insurance plans offered to employees of Link-Belt were handled quite differently. Short-term disability coverage was handled by Link-Belt, while Oliver dealt solely and directly with Sun Life concerning his long-term disability policy. Oliver paid 100% of the cost of the policy with after-tax dollars. Sun Life managed the claims and exercised discretion with respect to coverage. While Link-Belt offered the long-term policy to its employees, it made clear that participation was completely voluntary, and separate and distinct from the Link-Belt-administered short-term plan.

Despite the fact that Link-Belt sought the long-term plan and made it available to its employees in a form complimentary to its short-term coverage, there is no evidence that it endorsed or promoted the coverage, or held it out as its own policy. The evidence of record is to the contrary. In *Johnson v. Watts Regulator Co.,* 63 F.3d 1129 (1st Cir.) the court noted that when an employer separates itself from the plan, making it reasonably clear that the plan is a third-party offering, rather

than hawking the plan to its employees as "our plan," and an integral part of its offering, the employer cannot be seen as endorsing the plan.

> [A]s long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under 29 C.F.R. § 2510.3-1(j)...It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

*Thompson*, 95 F.3d at 436, *quoting, Johnson,* 63 F.3d at 1133.  Additionally, the fact of filing an IRS form 5500, without more, is insufficient to compromise the otherwise clear employer neutrality in this case.  *See, ie., Ackerman v. Fortis Benefits Insurance Company*, 254 F.Supp.2d 792, 811, n. 14 (S.D.Ohio 2003).

For the reasons set forth herein the motion of the plaintiff will be granted and this matter will be remanded to the Jefferson Circuit Court.  A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED**.